## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| CARLA S.,[1] | : | Case No.  1:22-cv-662 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Carla S. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #7).

## I.    **Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits in August 2020, alleging disability due to several impairments, including diabetes, psoriatic arthritis, severe anxiety, stenosis of the spine, herniated discs, vertigo, high blood pressure, claustrophobia, pain in body, muscle pain, and numbness in back and feet. (Doc. #7-6, *PageID* #342). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Donald G. Smith. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since December 31, 2019, the alleged onset date.

Step 2: She has the following severe impairments: degenerative disc disease; vertigo; obesity; diabetes; hypertension; osteoarthritis; degenerative joint disease; psoriatic arthritis; and anxiety.

Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except [Plaintiff] can lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours per day; sit 6 hours per day; never climb ladder/rope/scaffold; occasionally climb ramp/stairs, balance, stoop, kneel, crouch, crawl; frequently handle, finger, and feel; must avoid temperature extremes, wetness and humidity, vibration, hazardous machinery and heights; can perform unskilled work with a SVP of one or two and a GED reasoning level of one or two; cannot perform

> fast paced production or fast paced quota work, such as assembly lines; and can maintain attention and concentration for 2 hours at a time, but does require the standard morning, lunch, and afternoon breaks."
>
> Plaintiff is unable to perform any past relevant work.

Step 5:    Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7-2, *PageID* #s 46-55). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability from December 31, 2019, through the date of his decision. *Id.* at 55.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 44-55), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

3

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

III. **Discussion**

On appeal, Plaintiff raises numerous assignments of error: (1) the ALJ erred in evaluating the medical opinions of Paul Sporn, M.D., the state agency reviewer on reconsideration, and Michele Schwegman, P.A., her primary care provider; (2) Plaintiff requires the use of a cane for balance, and the ALJ erred in failing to note that she must balance while standing and/or walking up to thirty hours a week to sustain light work; (3) the ALJ failed to evaluate Plaintiff's impairments and their functional limitations in combination under 20 C.F.R. § 404.1523; (4) the ALJ failed to properly evaluate Plaintiff's subjective complaints; and (5) the ALJ erred in asking improper hypothetical questions to the vocational expert. (Doc. #8, *PageID* #s 587-93).

The Commissioner counters that the ALJ properly evaluated the record according to the applicable regulations, including the medical opinions and Plaintiff's subjective symptoms. (Doc. #10, *PageID* #s 602-12).

### A. Evaluation of Medical Source Opinions

Since Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a

medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

*State agency physicians, Louis Russo, M.D., and Paul Sporn, M.D.*

Dr. Russo and Dr. Sporn reviewed Plaintiff's record in November 2020 and April 2021, respectively. (Doc. #7-3, *PageID* #s 138-52, 155-74). Dr. Russo and Dr. Sporn opined that

Plaintiff was limited to light work with postural and environmental limitations. *Id.* at 146-49, 165-71.

The ALJ found their assessments to be "persuasive" because they were "consistent with the record evidence of physical exams and imaging indicating lumbar degenerative disc disease, degenerative joint disease, osteoarthritis, obesity, and psoriatic arthritis causing pain and limitations in mobility with some relief from medication treatment." (Doc. #7-2, *PageID* #53). However, the ALJ added additional manipulative limitations to the residual functional capacity, explaining that they were supported by imaging showing mild arthritis. *Id.*

*Primary care provider, Michele Schwegman, PA-C*

The record shows that Plaintiff has treated with Ms. Schwegman since at least July 2019. (Doc. #7-7, *PageID* #s 450, 572). In addition to the medical records submitted from her treatment of Plaintiff, Ms. Schwegman completed a Chronic Pain Residual Functional Capacity assessment in July 2021, where she reported that Plaintiff's prognosis was fair, and she did not exhibit malingerer characteristics in the office. *Id.* at 572-73. Ms. Schwegman opined that Plaintiff can walk one half block without rest, sit for twenty minutes at one time, and stand for fifteen minutes at one time. *Id.* at 574. She should alternate sitting and standing at will and will need to elevate her legs to hip levels. *Id.* at 575. When asked how long Plaintiff could stand/walk or sit total in an eight-hour workday, Ms. Schwegman did not respond, noting, she "[does] not feel qualified to answer these questions based on limited time knowing [Plaintiff] and very subjective information." *Id.* Ms. Schwegman indicated that Plaintiff requires use of a cane for balance. *Id.* at 576. She

concluded that Plaintiff would have good and bad days, missing three days of work a month.  *Id.* at 577.

The ALJ concluded that Ms. Schwegman's opinion was "not persuasive."  (Doc. #7-2, *PageID* #53).  The ALJ explained that Ms. Schwegman "does not provide an opinion on exertional activities noting that she does not feel qualified to express an opinion based on limited time knowing [Plaintiff] although she reported treating [Plaintiff] twice a year since 2019. Although she was unable to indicate how long [Plaintiff] can stand, sit, walk, lift and carry, she noted that [Plaintiff] required a cane to help with balance. However, the objective record evidence of the treatment records do[es] not support the use of cane."  *Id.*  The ALJ noted that although Plaintiff had a limp on the left on one exam, the other exams did not indicate abnormal gait.  *Id.*

*Adam Greenfield, D.O.*

In November 2020, Dr. Greenfield evaluated Plaintiff and authored a consultive examination report on her physical functional limitations on behalf of the state agency.  (Doc. #7-7, *PageID* #s 538-44).  In his report, Dr. Greenfield noted that Plaintiff reported primarily suffering from chronic back pain, psoriatic arthritis with pain in the hip and shoulders, diabetes mellitus, hypertension, claustrophobia and anxiety, and "vertigo for unknown cause."  *Id.* at 538.

On examination, Dr. Greenfield observed that Plaintiff did not have any pain, swelling, heat, redness, or signs of inflammation of the upper and lower extremities.  (Doc. #7-7, *PageID* #s 539-40).  She also did not have abnormal sensory, motor, or reflex findings.  *Id*.  She was using a cane for balance on both sides, but her gait was normal with the cane, and she could fully squat. *Id*. She had full range of motion of the cervical and lumbar region, and all other areas, and she did

not have any muscle spasms with tenderness. *Id*. Her straight leg raising were negative; grip strength, dexterity, and fine manipulation were 5/5 bilaterally; and she had no problems buttoning and unbuttoning shirts or holding things. *Id*. Dr. Greenfield found her motor deficits of the upper and lower extremities were 5/5 bilaterally. *Id*. She was also alert, oriented times three, and was not in acute distress. *Id*.

Plaintiff contends that the ALJ erred in his evaluation of Dr. Sporn's and Ms. Schwegman's opinions. (Doc. #8, *PageID* #s 587-88). Specifically, she argues that Dr. Sporn's medical opinion was conclusory and solely reliant on Dr. Greenfield's sixteen-minute consultative exam[2] and that Ms. Schwegman's opinion was consistent and supported by the record. *Id.*

Plaintiff's argument is not well taken. Dr. Sporn did not solely rely on Dr. Greenfield's November 2020 consultative exam. He specifically listed the records he reviewed, including Plaintiff's medical records from December 2020 and January through March 2021, in the Evidence of Record, and summarized those records in the Finding of Facts and Analysis of Evidence. (Doc. #7-3, *PageID* #s 157-58, 161-62). In fact, the only evidence he did not review was Ms. Schwegman's opinion. In finding Dr. Russo's and Dr. Sporn's assessments persuasive, the ALJ cited to the entire medical record as supported by and consistent with their findings, indicating his review of the entire medical record in evaluating their opinions. (Doc. #7-2, *PageID* #53). Moreover, the ALJ included additional manipulative limitations in Plaintiff's RFC, referencing the

---

[2] Plaintiff also argues that her counsel "objected to [Dr. Greenfield's] consultative exam" and that the ALJ failed to rule on this objection. (Doc. #8, *PageID* #588). Plaintiff's objection is a comment in the remarks section of a December 2020 "Disability Report – Appeal" form. (Doc. #7-6, *PageID* #375). Plaintiff did not raise this objection in the November 2021 telephone hearing before the ALJ. (Doc. #7-2, *PageID* #s 106-36). In fact, Plaintiff's counsel both stated that there were no objections to any exhibits in Plaintiff's file and asserted that the record was complete. *Id*. at 109. Dr. Greenfield's consultative exam was an exhibit within Plaintiff's file at the time of the hearing. Therefore, Plaintiff waived this argument at the hearing.

9

x-ray imaging of Plaintiff's hands within the medical record, further demonstrating his complete evaluation of the medical record.  *See McQuillen v. Com'mr of Soc. Sec.*, No. 2:20-CV-6006, 2021 WL 6133277, at \*7 (S.D. Ohio Dec. 29, 2021) (King, M.J.) (When an ALJ includes more restrictive limitations than the medical experts in his RFC determination, if any error were committed, that error would be "surely harmless").

In addition, the ALJ did not commit error in finding Ms. Schwegman's opinion unpersuasive because her opinion is inconsistent with and unsupported by the medical record. (Doc. #7-2, *PageID* #53).  The ALJ properly explained that Ms. Schwegman's opinion that Plaintiff requires the use of a cane was not supported by or consistent with the medical record of normal exams.  (Doc. #7-2, *PageID* #53).  Substantial evidence supports the ALJ's conclusion. Specifically, as the ALJ recognized, Plaintiff had a limp at one exam, but she subsequently showed improvement with treatment.  *Id*.  Additionally, Dr. Greenfield indicated that Plaintiff did not present with an abnormal gait or any other abnormalities supporting the use of a cane.  *Id*.

Furthermore, the ALJ reasonably discounted Ms. Schwegman's medical opinion because she indicated that she was not qualified to answer some of the questions regarding Plaintiff's functional limitations.  (Doc. #7-7, *PageID* #s 575-77).  As noted above, although Ms. Schwegman opined that Plaintiff can walk one half block without rest, sit for twenty minutes at one time, and stand for fifteen minutes at one time, she left blank how long Plaintiff could sit or walk total in a workday and how much Plaintiff could lift or carry.  *Id*. at 574, 575-77.  Ms. Schwegman deferred from answering these questions, stating that she did not know Plaintiff long enough to make such determinations.  *Id*. at 575.  It is unclear how Ms. Schwegman could determine how long Plaintiff

10

could sit, stand and walk at a time, but was unable to form an opinion on Plaintiff's ability to sit, stand, or walk during an eight-hour workday.  Thus, the ALJ did not err in finding Ms. Schwegman's opinion non-persuasive.  *Bell v. Comm'r of Soc. Sec.*, No. 1:23-CV-0256, 2023 WL 9603894, at *11 (N.D. Ohio Dec. 28, 2023) (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012)) ("Internal inconsistency can be an adequate basis for rejecting a medical opinion.").

Although Plaintiff argues that the ALJ should have found Ms. Schwegman's opinion persuasive because Dr. Sporn did not review all relevant evidence, the record shows that Ms. Schwegman assessed the same records as Dr. Sporn.  Indeed, there is no medical evidence in the record from after March 2021 and before Ms. Schwegman's July 2021 medical opinion.  (Doc. #7-7, *PageID* #s 566-67, 572-81).  Therefore, both Ms. Schwegman's and Dr. Sporn's opinions were based on the same medical evidence with conflicting conclusions—Ms. Schwegman's conclusion that Plaintiff would need a cane, need legs elevated, and need to miss three days of work a month and Dr. Sporn's conclusion that Plaintiff could perform light work.  (Doc. #7-7, *PageID* #s 572-81); (Doc. #7-3, *PageID* #s 165-73).  "It is the ALJ's duty, not the Court's, to resolve conflicts in the medical evidence, and the Court must uphold the ALJ's decision if it is supported by substantial evidence, even when there is substantial evidence to support the opposite conclusion or a reviewing court would resolve the issues of fact differently."  *See Sandra B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-960, 2022 WL 444724, at *8 (S.D. Ohio February 14, 2022) (Litkovitz, M.J.) (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016)).  Here, substantial evidence supported the ALJ's resolution of the conflict in the medical opinions.

**B.     Use of Cane**

An individual's RFC may be impacted by a requirement to use a hand-held assistive device. However, if a cane is not medically required, it cannot be considered a restriction or limitation on an individual's ability to work.  *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). Social Security Ruling 96-9p addresses the use of an assistive device in determining an individual's RFC and the vocational implications of such devices:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

Soc. Sec. R. 96-9p, 1996 WL 374185, at *7 (Soc. Sec. Admin. July 2, 1996).  Notably, evidence of a prescription for an assistive device is not alone sufficient to support a finding that it is medically required.  *Ross v. Comm'r of Soc. Sec.*, No. 2:17-CV-169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-CV-169, 2018 WL 1406826 (S.D. Ohio Mar. 21, 2018) (Marbley, D.J.) ("Thus, the undersigned rejects Plaintiff's contention that a doctor's prescription for an assistive device amounts to an opinion that a cane is 'medically necessary' within the context of evaluating claims for social security benefits.").  The "burden to prove through clinical evidence that a cane is medically required" is on the plaintiff. *Baker v. Comm'r of Soc. Sec.*, No. 2:19-CV-4323, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020) (Morrison, D.J.) (quoting *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013)).

In this case, Plaintiff argues that there is "little dispute" that she requires the use of the cane for balance, as even Dr. Greenfield noted its use on his examination.  (Doc. #8, *PageID* #588).  Plaintiff also argues that the ALJ erred in failing to note that she must balance while standing and/or walking up to thirty hours a week to sustain light work, and by not dealing with Plaintiff's need to elevate her legs.  *Id.* at 588-89.

Plaintiff's argument is not well taken.  Under Sixth Circuit law, Plaintiff has the burden to prove through clinical evidence that a cane is "medically necessary."  *Baker*, 2020 WL 2213893, at *7.  Clinical evidence includes prescriptions, medical treatment records, and medical opinions.  *Strain*, 2013 WL 3947160, at *25 (In finding that there was no evidence other than Plaintiff's testimony to support cane use, the Court noted there were no prescriptions, medical treatment records, or medical opinions in the record that Plaintiff required the use of a cane).  In this case, as the ALJ observed, Plaintiff was not prescribed the cane by any medical professional.  (Doc. #7-2, *PageID* #49) (citing Doc. #7-6, *PageID* #364).  Further, as discussed by the ALJ, the medical treatment records do not support a finding that Plaintiff's cane is "medically necessary"; while Plaintiff had a limp on the left during a June 2020 exam, her exams in August, September, and November 2020 did not indicate an abnormal gait, with Plaintiff reporting a decrease in pain after medication.  (Doc. #7-2, *PageID* #53) (citing Doc. #7-7, *PageID* #s 495, 506, 535, 540).  Although Plaintiff related in her Adult Function Report that she "use[d] a cane when I'm out sometimes," this report does not qualify as clinical evidence required to show a cane to be "medically necessary."  Similarly, although Plaintiff's counsel argues that Dr. Greenfield "noted" Plaintiff's use of cane during his examination, Dr. Greenfield's observation was not a medical opinion that

her cane use was "medically necessary." Rather, as the ALJ recognized, Dr. Greenfield stated that Plaintiff reported her cane use was for balance, while his examination of her found her able to walk without the cane with a normal gait and did not find any abnormalities in her lower extremities to support a cane as "medically necessary." (Doc. #7-2, *PageID* #53) (citing Doc. #7-7, *PageID* #s 538-40). Finally, the ALJ found Ms. Schwegman's opinion—the only medical opinion supporting Plaintiff's cane use as required for balance—to be unpersuasive because it was unsupported by the "objective record evidence." (Doc. #7-2, *PageID* #53). Plaintiff has not pointed to any evidence in the medical record that establishes that her cane use is "medically necessary." Therefore, Plaintiff has not carried her burden to prove through clinical evidence that the cane was "medically necessary," and the ALJ did not err in excluding use of a cane from Plaintiff's RFC.

### C.     Combination of Impairments

Plaintiff next argues that the ALJ failed to evaluate her impairments and their functional limitations in combination under 20 C.F.R. § 404.1523. (Doc. #8, *PageID* #s 589-90). Specifically, Plaintiff contends that the ALJ's summary of the medical evidence and his statement that he considered the obesity are erroneous. *Id.* Plaintiff argues that her obesity significantly contributes to limitations on standing and/or walking to perform light work for forty hours a week. *Id.* at 590. Plaintiff's argument is not well taken.

Under 20 C.F.R. § 404.1523(c), the ALJ "will consider the combined effect of all [Plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Id.* An ALJ must consider the record holistically when assessing

14

combined impairments; ignoring parts of the record in the ALJ's assessment would violate 20 C.F.R. § 404.1523(c).  *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 726 (6th Cir. 2014). However, "[t]his court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job."  *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)).  "We will affirm 'if substantial evidence, or even a preponderance of the evidence, supports the [Plaintiff's] position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Id*. (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Here, the ALJ assessed the entire medical record holistically, describing every record in Plaintiff's medical record in his decision.  (Doc. #7-2, *PageID* #s 49-51); *cf. Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 726 (6th Cir. 2014).  Plaintiff argues that the ALJ did not properly examine the MRIs, x-rays, and exams, particularly Dr. Chunduri's June 2020 exam and "x-rays [that] showed mild degenerative changes of the left knee and moderate joint space narrowing of the right foot and a spur on the left foot along with mild arthritic changes of both hands."  (Doc. #8, *PageID* #s 589-90).  However, the ALJ thoroughly outlined the findings of the June 2020 exam, then incorporated those findings into an RFC with manipulative and postural limitations.  (Doc. #7-2, *PageID* #s 50, 52).  Furthermore, the ALJ included more restrictive manipulative limitations than the state agency reviewing physicians' assessments, specifically citing to the x-ray imaging of Plaintiff's hands.  (Doc. #7-2, *PageID* #53).

Regarding Plaintiff's obesity argument, the ALJ expressly considered Plaintiff's obesity in combination with her other impairments.  (Doc. #7-2, *PageID* #s 47, 50, 52) ("[T]he residual

functional capacity of light exertion with postural limitations also accounts for the [Plaintiff's] obesity and the stress that excess weight can place on her weight bearing joints that may contribute to the limitation of the range of motion of the skeletal spine and extremities.").  None of the treating sources or state-agency reviewing physicians offered any opinions that Plaintiff's obesity produced postural, exertional, or manipulative limitations that exceeded the limitations that the ALJ found in Plaintiff's RFC determination.  *See Brandes v. Berryhill*, No. 1:17-CV-607, 2018 WL 3829094, at *4 (S.D. Ohio Aug. 13, 2018) (Bowman, M.J.).  Additionally, Plaintiff did not list obesity among impairments she alleged to be disabling in her application for disability benefits. (Doc. #7-6, *PageID* #342); *Brandes,* 2018 WL 3829094, at *4.  The burden is on the Plaintiff to show "how the obesity, in combination with other impairments, limited her ability to a degree inconsistent with the ALJ's RFC determination."  *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Michigan July 21, 2017) (citing *Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (6th Cir. 2009)).  Plaintiff has not met this burden.  Therefore, the ALJ did not err in either his summary of the medical record or his consideration of obesity when assessing Plaintiff's impairments in combination.

### D.     Symptom Severity

Plaintiff next contends that the ALJ erred in conducting the symptom severity analysis. (Doc. #8, *PageID* #s 590-92).  When a Plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms.  *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, *3 (March 16, 2016).[3]  First, the ALJ must

---

[3] Soc. Sec. R. (SSR) 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. See SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *3-7; *see also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole. *See id.* Therefore, "absent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but found her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence.  (Doc. #7-2, *PageID* #51).  The ALJ explained that in her function report, Plaintiff indicated that she was "able to manage some of her personal care, prepare meals while sitting, do light household chores, drive a car, swim daily, shop for groceries in stores and by phone, and manage finances." *Id.* at 48 (citing Doc. #7-6, *PageID* #s 358-65).  Further, she noted that she used a cane "sometimes" when going out but that it was not prescribed. *Id.* at 49 (citing Doc. #7-6, *PageID* # 364).

Plaintiff argues that the ALJ committed several errors in his analysis of her symptom severity.  (Doc. #8, *PageID* #s 590-92).  Specifically, Plaintiff contends that the ALJ erred in addressing the following: Plaintiff's subjective complaints, the objective medical evidence, Ms. Schwegman's medical opinion, Plaintiff's medications and treatment, Plaintiff's daily activities, and Plaintiff's work record. *Id.*

As noted above, the ALJ found Plaintiff's statements to be inconsistent with the record as a whole.  (Doc. 7-2, *PageID* #53).  The ALJ demonstrated a full consideration of Plaintiff's subjective complaints by both listing them and by revealing their inconsistencies with his review of Plaintiff's daily activities, the objective medical evidence, the prior administrative medical findings, and medical opinions.  (Doc. #7-2, *PageID* #s 49, 52-53); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole).  For example, Plaintiff alleged she would be unable to work due to her diabetes. *Id.*

18

at 49. However, after reviewing the medical record, the ALJ found that Plaintiff's blood levels had improved with medication, indicating that it was under control and would have minimum to no effect on Plaintiff's functional limitations. (Doc. #7-2, *PageID* #52). Since Plaintiff's subjective complaints were inconsistent with the objective medical evidence and other evidence, the ALJ did not err in discounting them. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Furthermore, to the extent that Plaintiff contends that the ALJ did not account for every one of her subjective complaints, an ALJ is not required to discuss "every piece of evidence in the record for his decision to stand," if the ALJ considered the evidence. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).[4]

Moreover, the ALJ did not err in his consideration of the objective medical evidence. (Doc. #7-2, *PageID* #s 49-52). While the ALJ cannot rely on the objective medical evidence alone in his symptom severity analysis, the ALJ is mandated to seek and consider the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2); *Gentry*, 741 F.3d at 726. The ALJ detailed all the medical records regarding Plaintiff's back and lower extremities' pain, diabetes mellitus, hypertension, and anxiety. (Doc. #7-2, *PageID* #s 49-51). Although Plaintiff contends that this review was "conclusory only," and not an analysis, Plaintiff fails to note that the ALJ's detail of the medical record precedes his full analysis on the following page. (Doc. #8, *PageID* #590); (Doc. #7-2, *PageID* #52). Having examined the medical record, the ALJ explained that Plaintiff's pain in her back and lower extremities improved with medication treatment, leading to a normal

---

[4] While *Thacker* concerned SSR 96-7p, not its superseding SSR 16-3p, the case law remains fully applicable to SSR 16-3p determinations. *See Prichard v. Comm'r of Soc. Sec.*, No. 1:19-CV-573, 2020 WL 5544412, at *6 (S.D. Ohio Sept. 16, 2020) (Bowman, M.J.).

gait and full range of motion in her joints. *Id*. Additionally, the ALJ accounted for Plaintiff's "lumbar degenerative disk disease, degenerative joint disease, osteoarthritis, and psoriatic arthritis" as well as her "reoccurring hip pain requiring adjustment of her medications" in finding a light-work RFC with postural limitations. *Id*. The ALJ noted that medication had also controlled Plaintiff's diabetes and hypertension, which produced "minimal to no functional limitations associated with these conditions." *Id*. As discussed above, the ALJ explicitly considered Plaintiff's obesity for its potential strain on Plaintiff's joints, effect on manipulating objects, and effect on intolerance to temperature extremes in assigning a light-work RFC. *Id*. Finally, the ALJ provided mental limitations in the RFC to account for Plaintiff's anxiety to the extent her limitations are supported by the medical records and medication history. *Id*. In summary, the ALJ properly considered the objective medical evidence in his subjective symptom analysis.

Plaintiff also argues that the ALJ's symptom severity analysis is inconsistent because the state agency reviewing physicians did not have access to Ms. Schwegman's medical opinion at the time of their assessments. (Doc. #8, *PageID* #591). As addressed above, the ALJ resolved the conflict in the medical opinions and supported his findings with substantial evidence; therefore, the evidence cannot be reweighed. *See Sandra B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-960, 2022 WL 444724, at *8 (S.D. Ohio Feb. 14, 2022) (Litkovitz, M.J.) (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016)).

Plaintiff further argues that the ALJ failed to take her "strong medications, including Methotrexate" into consideration in his symptom-severity analysis. (Doc. #8, *PageID* #52). However, the ALJ noted both Plaintiff's medications and her improved condition after treatment.

(Doc. #7-2, *PageID* #s 51-52); *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(v). For example, ALJ discussed the prescribed medications and Depro-Medrol injections Plaintiff received to alleviate her back and lower extremities' pain, as well as her limited motion. (Doc. #7-2, *PageID* #52). He also noted the injections received in her hips. *Id*. The ALJ also described the medications Plaintiff took for her diabetes mellitus and hypertension, as well as her anxiety medications. *Id*. Moreover, the ALJ cited to treating sources that indicated Plaintiff had regained motion and lessened pain after medication, had improved blood sugar and pressure levels, and anxiety managed by medication. *Id*. Therefore, the ALJ properly analyzed and considered the medication and treatment factors in his symptom severity analysis under 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

Plaintiff argues that her daily activities consist of "watching television and reading, sedentary activities" and that "her husband helps with the cooking and does the majority of the housework, and she cannot stand long enough to cook dinner" to contend that the ALJ improperly considered her fit for light work instead of sedentary work. (Doc. #8, *PageID* #591). However, the ALJ properly considered Plaintiff's activities. While Plaintiff does watch television and read, the ALJ noted that she also is "able to manage some of her personal care, prepare meals while sitting, do light household chores, drive a car, swim daily, shop for groceries in stores and by phone, and manage finances." (Doc. #7-2, *PageID* #49); *see Smith v. Comm'r of Soc. Sec.*, No. 1:09-CV-526, 2010 WL 5464889, at *7 (S.D. Ohio Aug. 5, 2010) (Wehrman, M.J.) ("the ALJ also properly considered that [Plaintiff] engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding."[5]). Some of Plaintiff's daily

[5] Like the displacement of SSR 96-7p by SSR 16-3p, while "credibility" is no longer permitted in a "consistency" analysis, the prior case law remains applicable. *See Prichard v. Comm'r of Soc. Sec.*, No. 1:19-CV-573, 2020 WL 5544412, at *6 (S.D. Ohio Sept. 16, 2020) (Bowman, M.J.).

activities are sedentary, but some are not, a factor that the ALJ took into his consideration of Plaintiff's alleged symptoms. 20 C.F.R. § 404.1529(c)(3)(i); *see also Julie W. v. Comm'r of Soc. Sec.,* No. 1:19-CV-573, 2022 WL 3334244, at *7 (S.D. Ohio Aug.12, 2022) (Litkovitz, M.J.) ("While plaintiff argues that the ALJ overstated plaintiff's activities of daily living, the ALJ properly considered this evidence as one factor in evaluating plaintiff's alleged symptom severity").

Plaintiff also argues that "[she] has a good work record with good earnings, showing a desire to work and not be found disabled" and that the ALJ "must also consider this good work record." (Doc. #8, *PageID* #592). The Commissioner asserts that the ALJ is not required to discuss work history. (Doc. #10, *PageID* #606) (citing *Dutkiewicz v. Comm'r Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016)). While work history is a factor in the symptom-severity analysis, it is only one factor in the ALJ's multi-factor analysis. *See* 20 C.F.R. § 404.1529(c)(3); *Tina M. S. v. Comm'r of Soc. Sec.*, No. 1:22-CV-236, 2023 WL 2788830, at *15 (S.D. Ohio Apr. 5, 2023) (Litkovitz, M.J.). The ALJ is not required to discuss every factor, only consider all the *relevant* evidence to support his conclusion. *Roach,* 2021 WL 4553128, at *10–11 (emphasis added). As related above, the ALJ thoroughly discussed Plaintiff's subjective complaints, the objective medical evidence, medical opinions, medication, treatment, and daily activities in his symptom-severity analysis. (Doc. #7-2, *PageID* #s 49-53). Plaintiff has failed to allege how her good work record undermines the substantial evidence supporting the explained factors of the ALJ's symptom severity analysis. *See Biederman v. Comm'r Soc. Sec.*, No. 1:20-CV-356, 2021 WL 5504550, at *13 (S.D. Ohio Nov. 24, 2021) (Litkovitz, M.J.) ("Plaintiff, however, fails to explain how [his]

alleged work record and earnings cast doubt on the ALJ's weighing of [his] subjective allegations of pain and limitations."). Therefore, Plaintiff has not met her burden to present a "compelling reason" to disturb the ALJ's consistency determination. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

### E. Vocational Expert Hypothetical

Finally, in her last statement of error, Plaintiff alleges that the ALJ erred at Step 5 by giving improper hypothetical questions to the vocational expert because "[the questions] left out the use of the cane for balance while standing and or walking and also the use of only one hand while standing and/or walking in doing light work," as well as an omission of both "the need to elevate her legs at hip level while sitting" and "the three days of work a month she would miss according to Ms. Schwegman." (Doc. #8, *PageID* #592). According to Plaintiff, the ALJ also erred by failing to consider the impact COVID-19 would have on the number of jobs in the national economy asserted by the vocational expert. *Id*. at 592-93. In response, the Commissioner points out that "[Plaintiff's] argument is a rephrasing of Plaintiff's residual functional capacity argument and lacks merit for the same reasons as the primary argument, and again impermissibly asks the Court to reweigh evidence in her favor." (Doc. #10, *PageID* #611) (citing *Dyson*, 786 F. App'x at 588). Furthermore, the Commissioner contends that Plaintiff's second argument lacks merit because "the ALJ properly relied on the testimony of a vocational expert regarding job numbers in accordance with the regulations." *Id*. (citing 20 C.F.R. §404.1566(e)). Finally, the Commissioner argues that Plaintiff's counsel waived the argument by failing to cross-examine the

vocational expert at the hearing. *Id.* at 611-12 (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016); *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011)).

During the hearing, the ALJ posed a series of hypotheticals to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #7-2, *PageID* #s 132-34). In the first hypothetical posed by the ALJ, the vocational expert was able to identify at least 863,000 jobs that would be available in the national economy for an individual with the specified limitations. *Id.* at 132-33. In the next two hypotheticals, the vocational expert was asked about additional hypothetical limitations, including the tolerance for off-task behavior and absenteeism, as well as Ms. Schwegman's limitations of cane usage and leg elevation. *Id.* at 133-34. In response, the vocational expert indicated that either off-task behavior exceeding 15 percent or absences of two or three workdays a month would be work-preclusive. *Id.* Similarly, the vocational expert testified that Plaintiff would not be able to maintain gainful employment if she either needed to "elevate legs to hip level" or "required the use of a cane or other assistive device for balance." *Id.* at 134.

In assessing Plaintiff's RFC, the ALJ ultimately decided not to include any of the hypothetical limitations proposed in the last two hypothetical questions. *See id.* at 48-49. Plaintiff contends that the failure to include these limitations in the RFC constitutes reversible error as she would have been found disabled had these limitations been included. (Doc. #8, *PageID* #592).

An individual's RFC is the "most you can still do despite your limitations …." 20 C.F.R. § 404.1545(a)(1) (2012). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ's RFC assessment must be "based on all of the relevant evidence in

the case record, including information about the individual's symptoms and any 'medical source statements'–*i.e.*, opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). Furthermore, in assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (The ALJ is not required to incorporate a plaintiff's subjective complaints in hypothetical questions to the vocational expert if the ALJ finds them to be unsupported by the record as a whole). However, an ALJ errs if the physical or mental limitations supported by the record do not appear in a hypothetical question later relied on in determining a plaintiff's RFC. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009).

In this case, Plaintiff has not shown that the ALJ erred in the hypothetical questions posed to the vocational expert. As shown above, the ALJ determined that Plaintiff's subjective complaints and Ms. Schwegman's opinion were not supported by the medical evidence or the record as a whole. (Doc. #7-2, *PageID* #s 51-53). Nevertheless, the ALJ did include the cane usage, leg elevation, or three days of work missed a month in his third hypothetical question, indicating that the ALJ considered these limitations when determining Plaintiff's RFC, but did not

find them supported by the record.  (Doc. #7-2, *PageID* #134).  Because the ALJ did not find these limitations supported by the medical evidence or other evidence in the record, the ALJ did not pose or rely on improper hypothetical questions.  *Griffeth,* 217 F. App'x at 429.

Turning to Plaintiff's second vocational expert argument, "the ALJ [is] under no duty to 'conduct an independent investigation' into the vocational expert's testimony to determine whether it was correct."  *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)).  Instead, if a plaintiff had the opportunity to cross-examine the vocational expert at the hearing and failed to do so, that argument is waived on appeal.  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016); *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011).

In this case, Plaintiff's counsel did not ask the vocational expert about the impact COVID-19 would have on the number of jobs in the national economy.  (Doc. #7-2, *PageID* #s 134-35).  Indeed, when the ALJ offered an opportunity for Plaintiff's counsel to ask any questions of the vocational expert, Plaintiff's counsel indicated he had no questions.  *Id*.  Accordingly, under Sixth Circuit precedent, Plaintiff has waived this argument by failing to cross-examine the vocational expert on the issue during the hearing.  Notably, Plaintiff's counsel would have been on sufficient notice to address the concern of COVID-19 impacting the number of jobs in the national economy at the time of the hearing—November 8, 2021, long after the onset of the pandemic.  For these reasons, Plaintiff's final argument is not well taken.

**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. #8) is **OVERRULED;**

2.  The Commissioner's non-disability determination is **AFFIRMED**; and

3.  The case is terminated on the Court's docket.


March 28, 2024                                  *s/Peter B. Silvain, Jr.*
                                                Peter B. Silvain, Jr.
                                                United States Magistrate Judge